UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:  GEORGE P. GONZALES,                                   No. 23-10519-j7

      Debtor.

---

DANIEL RAEL and GERALDINE RAEL,

      Plaintiffs,

v.                                                           Adversary No. 23-1041-j

GEORGE GONZALES,

      Defendant.

## <u>MEMORANDUM OPINION</u>

Before the Court is Plaintiffs' latest attempt[1] to obtain summary judgment in their favor determining that a debt resulting from a prior State Court judgment entered in favor of Plaintiffs and against Defendant is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) and/or (a)(6)[2] based on the preclusive effect of the State Court's judgment and related findings and conclusions. *See* Plaintiff's [sic] Renewed Motion for Summary Judgment ("Renewed Motion" – Doc. 55) and Plaintiff's [sic] Supplement to the Renewed Motion for Summary Judgment ("Supplement" – Doc. 65). The Defendant did not respond to the Renewed Motion for summary judgment or to the Supplement. The Renewed Motion and Supplement remain defective in form in several

---

[1] Plaintiffs filed two motions for summary judgment (Doc. 8 and Doc. 55), a motion to reconsider the denial of Plaintiffs' motion for summary judgment (Doc. 46 and Doc. 48), and three supplements to existing motions for summary judgment (Doc. 30, Doc. 42, and Doc. 65).

[2] All future statutory references are to title 11 of the United States Code. The complaint initiating this adversary proceeding included a non-dischargeability claim under § 523(a)(4) based on fraud or defalcation while acting in a fiduciary capacity. *See* Doc. 1. The Renewed Motion does not seek summary judgment on Plaintiffs' non-dischargeability claim under § 523(a)(4).

respects.[3] Nevertheless, because Plaintiffs have attached certified copies of 1) the State Court's Findings of Fact and Conclusions of Law ("FFCL"),[4] 2) the Final Judgment entered in the State Court,[5] 3) the Transcript of Proceedings from the hearing held March 28, 2022, in the State Court ("First Transcript"),[6] and 4) the Transcript of Proceedings from the bench trial held in the State Court on June 22, 2022 ("Second Transcript"),[7] and because the Court is satisfied that the State Court's FFCL and Final Judgment are entitled to preclusive effect establishing the non-dischargeable nature and amount of the debt, the Court will grant summary judgment in favor of Plaintiffs determining that a portion of the debt awarded in the Final Judgment attributable to Defendant's non-dischargeable conduct is non-dischargeable.

BACKGROUND AND PROCEDURAL HISTORY

Defendant George Gonzales filed a voluntary petition under chapter 7 of the Bankruptcy Code on July 7, 2023. Pre-petition, Plaintiffs Daniel Rael and Geraldine Rael obtained a judgment against Mr. Gonzales in the amount of $454,613.04 entered in an action styled, *Daniel Rael and Geraldine Rael v. George Gonzales, Casaundra Luckey, and Wells Fargo Bank, N.A.*, Case No. D-1333-CV-2019-00078, filed in the Thirteenth Judicial District Court, County of Cibola, State of New Mexico (the "State Court Action").[8] Plaintiffs initiated this adversary

---

[3] For example, instead of stating as a fact not subject to genuine dispute that Defendant's conduct was willful and malicious, the Renewed Motion identifies as a numbered fact not subject to genuine dispute that the state court, "[m]ade a specific Finding of Fact (No. 37) that Defendant's conduct was 'willful, malicious, and in bad faith.'" Such a statement of "fact" simply identifies what the State Court found without stating as a fact not in genuine dispute that Defendant acted willfully and maliciously. Many of the numbered facts in the Renewed Motion suffer from this defect. Similarly, two of the numbered facts not subject to genuine dispute merely state that a copy of a transcript from the State Court proceedings is attached as an exhibit. *See* Motion, ¶¶ 31 and 32.

[4] *See* Supplement (Doc. 65), Exhibit 4 (Doc. 65-4).

[5] *See* Supplement (Doc. 65), Exhibit 5 (Doc. 65-5).

[6] *See* Supplement (Doc. 65), Exhibit 6 (Doc. 65-6).

[7] *See* Supplement (Doc. 65), Exhibit 7 (Doc. 65-7).

[8] *See* Final Judgment.

proceeding on October 2, 2023, by filing a Complaint Objecting to Discharge of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6).[9]

Plaintiffs filed the Renewed Motion on September 24, 2024.[10] The Court noted certain deficiencies in the Renewwed Motion and fixed a deadline of December 2, 2024, for Plaintiffs to supplement the Renewed Motion if they wished to do so.[11] Plaintiffs obtained an extension of the deadline to supplement the Renewed Motion fixed in the Court's Order and filed the Supplement on December 16, 2024.[12] Plaintiffs also filed and served on Defendant a notice of deadline to object to the Renewed Motion, fixing a 21-day deadline to object to the Renewed Motion and Supplement.[13] Defendant has not timely or untimely filed an objection or other response in opposition to the Renewed Motion and Supplement.

## FACTS NOT SUBJECT TO GENUINE DISPUTE

The preclusive effect of the State Court's FFCL and Final Judgment, and the State Court record before this Court, establish that the following facts are not subject to genuine dispute:[14]

1. Defendant entered into a purchase agreement for the sale of certain severely fire-damaged property (the "Property") to Plaintiffs.[15]

2. Plaintiffs paid Defendant the entire $15,000 required by the purchase agreement for the purcase of the Property.[16]

---

[9] Doc. 1.
[10] Doc. 55.
[11] *See* Order Regarding Plaintiff's Renewed Motion for Summary Judgment ("Order" – Doc. 58).
[12] *See* Doc. 63 and Doc. 65.
[13] *See* Doc. 66. NM LBR 7056-1(c) fixes a response deadline of 21 days from the date of service of a motion for summary judgment.
[14] Some of the facts identified in this Memorandum Opinion as facts not subject to genuine dispute are supported by facts and mixed questions of fact and law labeled as "Conclusions" in the State Court's FFCL. Such fact findings may appropriately be given preclusive effect even though they are identified as "Conclusions" in the FFCL.
[15] FFCL, ¶ 3.
[16] FFCL, ¶ 10.

3

3.      Plaintiffs spent $99,550.95 for labor and materials to renovate the Propeerty. The reonovation was performed by Plaintiff Mr. Rael's contruction company.[17]

4.      The market value of the renovations was $124,436.69, which closely matched the estimate Mr. Rael gave Defendant, prior to Defendant's sale of the Property to Plaintiffs, for Mr. Rael's construction company to perform the renovations.[18]

5.      After Plaintiffs made the last installment of the $15,000 purchase price to Defendant on May 15, 2025, Plaintiffs rented the Property to Casaundra Luckey on July 1, 2015, for $850.00 per month.[19]

6.      Ms. Luckey made rental payments to Plaintiffs from July 1, 2015, to October 9, 2018.[20]

7.      Defendant knew that Casaundra Luckey was renting the Property from Plaintiffs.[21]

8.      On January 18, 2019, Defendant signed a warranty deed conveying the Property to Casaundra Luckey for $90,000.00 even though she was willing to pay $125,000 for the Property. [22]

9.      When he secretly sold the Property to Cassundra Luckey, Defendant knew that Plaintiffs had paid him the full $15,000 purchase price for the Property, that he was obligated to convey the Property to Plaintiffs, that Plaintiffs had invested a signficant amount renovating the

---

[17] FFCL, ¶¶ 13, 14, 16
[18] FFCL, ¶¶ 13, 18.
[19] FFCL, ¶¶ 9, 20
[20] FFCL, ¶ 22.
[21] FFCL, ¶ 28
[22] FFCL, ¶¶ 24, 29, 34.

4

Property that substantially increased its value, and that Plaintiffs were renting the Property to Casaundra Luckey.[23]

10.    Defendant intentionally interfered with the lease agreement between Ms. Luckey and Plaintiffs.[24]

11.    Defendant never contacted Plaintiffs about the dispute over ownership of the Property and never told Plaintiffs that he planned to sell the Property to Ms. Luckey.[25]

12.    Defendant knew that the higher price he obtained in the second sale was attributable to the Plaintiffs' renovations to the Property, but he never reimbursed Plaintiffs for their work.[26]

13.    Defendant's conduct was willful, malicious, and in bad faith.[27]

14.    Plaintiffs filed a complaint initiating the State Court Action on March 8, 2019.[28]

15.    At a hearing held in the State Court Action on March 28, 2022, the State Court determined that it would consider Defendant's evidence regarding liability at the trial on damages.[29]

16.    The State Court held a final evidentiary hearing in the State Court Action on June 22, 2022, at which Defendant appeared and presented evidence.[30]

---

[23] FFCL, ¶¶ 25, 26, 27, 28, 37.
[24] FFCL, ¶ H.
[25] FFCL, ¶ 39.
[26] FFCL, ¶ 37.
[27] FFCL, ¶ 37.
[28] *See* Supplement (Doc. 65), Exhibit 1 (Doc. 65- 1) – Complaint for Money Damages for Breach of Written Contract, Breach of the Covenant of Good Faith and Fair Dealing, Fraud, Fraudulent Misrepresentation, Unjust Enrichment, Tortious Interference with Contractual Relations, Intentional Infliction of Emotional Distress, and Quiet Title.
[29] *See* First Transcript, pp. 11 - 13.
[30] *See* Second Transcript.

5

17.     The State Court considered both the merits of liability and damages at the final evidentiary hearing held June 22, 2022, in the State Court Action.[31]

18.     At the end of the hearing held June 22, 2022, the State Court stated that it would "determine who wins and how much is owed."[32]

19.     When pressed by the State Court at the hearing held June 22, 2022, Defendant had no explanation for his conduct.[33]

20.     The State Court entered its FFCL on September 27, 2022.[34]

21.     The State Court enterd a Final Judgment on November 1, 2022, in favor of Plaintiffs and against Defendant in the amount of $454,613.04, consiting of $177,686.69 in compensatory damages ($15,000 as compensation for Plaintiffs' purchchase price for the Property, $124,436.69 as compensation for unjust enrichment, and $38,250 for lost rents), $250,000 in punitive damages, and $26,926.35 to reimburse Plaintiffs for their legal fees and costs.[35]

## DISCUSSION

A.  *Summary Judgment Standards and the Defendant's Version of the Events Underlying Plaintiffs' Claims*

Defendant did not file an objection or response to the Renewed Motion. Nevertheless, "a party's failure to file a response to a motion for summary judgment is not, by itself, a sufficient basis on which to enter judgment against the party." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact and

---

[31] *Id.*
[32] Second Transcript, p. 51, l. 12.
[33] FFCL, ¶ 37.
[34] FFCL.
[35] Final Judgment; FFCL ¶¶ D, G, I, J, K, L.

the party seeking summary judgment is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056. The moving party bears the burden of identifying the material facts with respect to which the party asserts no genuine dispute exists, properly supported by evidence, admissions, and other materials in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . demonstrate[ing] the absence of a genuine issue of material fact."). In determining whether to grant summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)).

From prior filings in this adversary proceeding, the Court understands Defendant's position with respect to Plaintiffs' claims. Defendant maintains that Plaintiffs only paid him $2,500.00 as a downpayment, but did not pay him the full amount of the agreed upon purchase price for the Property.[36] He also disagrees that he knew Ms. Luckey was renting the Property from Plaintiffs, contending that he was made aware that Plaintiffs were renting the Property to Ms. Luckey only after Ms. Luckey asked him to sell her the Property because Plaintiffs informed her that they did not own the Property.[37] Defendant disagrees with the judgment amount, contending that Plaintiffs only spent $40,000 renovating the Property (not $96,000 as was reported to the State Court), and that punitive damages should not have been awarded because Plaintiffs failed to pay him for the Property.[38] He also disagrees that his sale of the Property to

---

[36] *See* Answer to Plaintiff Judgement ("Answer" – Doc. 41) , ¶¶ 1, 4, 6, 16, and p. 4.
[37] *See* Answer, ¶ 2.
[38] Answer, ¶¶ 15, 16.

Ms. Luckey was willful and malicious, since he still owned the Property at the time of sale, and Plaintiffs did not pay him.[39] Finally, Defendant complains that he did not receive a fair trial in the State Court Action because he did not have an attorney, and that the documentation Plaintiffs submitted to the State Court to establish that Plaintiffs paid the entire purchase price was false because it did not reflect Defendant's signature on the receipts.[40]

Defendant has been resolute in this adversary proceeding in stating his version of events surrounding the sale of the Property to Plaintiffs, Plaintiffs' renovation of the Property, and Defendant's later sale of the Property to Ms. Luckey. Unfortunately for Defendant, the State Court found otherwise after an evidentairy trial on both liablity and damages at which Defendant had a fair opportuinty to present evidence. Based on its evaluatoin of the evidence, the State Court entered a Final Judgment against Defendant. If Defendant believes the State Court erred, his recourse was to appeal the State Court's Final Judgment to the New Mexico Court of Appeals and/or to file a motion under New Mexico Rules of Civil Procedure for the Distrct Courts 1-059 and/or 1-060 asking the State Court to alter or amend the judgment or seeking relief from the judgment. This Court cannot revisit the State Court's findings or conclusions, but instead can only determine whether such findings and conclusions should be given preclusive effect in this later proceeding. *See In re Miller*, 666 F.3d 1255, 1261 (10th Cir. 2012) ("[A]ttempts . . . to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion principles . . . .").  Thus, even though the Renewed Motion does not strictly comply with all of the procedural requirements of Fed. R. Civ. P. 56(c), made applicable to adverary proceedings by Fed. R. Bankr. P. 7056, in the absence of a response, it is appropriate to grant summary judgment in favor of Plaintiffs if the elements necessary to apply the doctrine of issue

---

[39] Answer, ¶ 17.
[40] Answer, p. 4 (¶¶ 18 -20).

preclusion have been satisfied and the FFCL and Final Judgment establish the facts necessary to sustain a non-dischargeability claim under § 523(a).[41]

B. *New Mexico issue preclusion standards*

Whether Plaintiffs are entitled to summary judgment on their non-dischargeability claims depends on whether the FFCL and Final Judgment can be given preclusive effect under the doctrine of issue preclusion to establish the non-dischargeable nature and amount of the debt. Issue preclusion, also known as collateral estoppel, prevents a party who lost on an issue decided in a prior lawsuit from relitigating the same issue in a subsequent suit. *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009). Issue preclusion may be invoked to bar relitigation of issues of fact determined in a prior state court action resulting in a final judgment to establish the non-dischargeability of a particular debt in a subsequent bankruptcy case. *Klemens v. Wallace* (*In re Wallace*), 840 F.2d 762, 764 (10th Cir. 1988). To determine the preclusive effect of a state court judgment, the bankruptcy court applies the law of the state in which the judgment was rendered. *See Sanders v. Crespin (In re Crespin)*, 551 B.R. 886, 895 (Bankr. D.N.M. 2016) ("In bankruptcy court, the general rule is that the court 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984))).

Issue preclusion under New Mexico law requires satisfaction of the following elements:

    1) the parties in the first suit must be the same or in privity with the parties in the second suit;
    2) the second suit asserts a different cause of action than the first suit;

---

[41] *See Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991) ("[C]ollateral estoppel [issue preclusion] principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *Taylor v. Jasper (In re Jasper)*, 356 B.R. 787, No. NM-06-092, 2007 WL 390287, at *3 (10th Cir. BAP Feb. 5, 2007) ("Collateral estoppel [issue preclusion] may be applied in bankruptcy proceedings to determine dischargeability of a debt."), *aff'd*, 312 F. App'x 97 (10th Cir. 2008).

9

3) the issue or fact was actually litigated in the first suit; and
                    4) the issue was necessarily determined in the first suit.

*Blea v. Sandoval,* 1988-NMCA-036, ¶ 18, 107 N.M. 554, 559, 761 P.2d 432, 437.[42]

    If the party seeking to apply issue preclusion satisfies these four elements, and it is put at

issue, the Court must determine whether the party against whom issue preclusion is asserted had

a full and fair opportunity to litigate the issue in the prior proceeding. *Shovelin v. Cent. New*

*Mexico Elec. Co-op, Inc.,* 1993-NMSC-015, ¶10, 115 N.M. 293, 297, 850 P.2d 996, 1000; *see*

*also Sergejev v. Alderman (In re Alderman)*, Adv. No. 20-1003-j, 2021 WL 866691, at *5 (Bankr.

D.N.M. Mar. 8, 2021) (issue preclusion requires that the opposing party had a full and fair

opportunity to litigate in the prior action).

    The first two elements necessary to apply issue preclusion are easily satisfied. Both

Plaintiffs and Defendant were parties to the State Court Action and are parties in this adversary

proceeding, and the non-dischargeability claims asserted in this adversary proceeding are

different than the claims asserted in the State Court Action. *See Monge v. Jayme (In re Jayme)*,

Adv. No. 15-1079-t, 2017 WL 2533340, at * 3 (Bankr. D.N.M. June 9, 2017) (state law claims

tried in state court are different from the non-dischargeability claims asserted before the

bankruptcy court, since the non-dischargeability claims "did not arise until Defendants filed

bankruptcy.").

    The third and fourth elements necessary to apply issue preclusion are whether the issues

to be precluded in this adversary proceeding were actually litigated and necessarily determined

---

[42] *See also Shovelin v. Cent. New Mexico Elec. Coop., Inc.,* 1993-NMSC-015, ¶ 10, 115 N.M. 293, 297,
850 P.2d 996, 1000 (elements of issue preclusion are: "(1) the party to be estopped was a party to the prior
proceeding, (2) the cause of action in the case presently before the court is different from the cause of
action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the
issue was necessarily determined in the prior litigation."); *Ideal v. Burlington Res. Oil & Gas Co.*, 2010-
NMSC-022, ¶ 9, 148 N.M. 228, 231–32, 233 P.3d 362, 365–66 (same).

10

in the Final Judgment. The third and fourth elements are satisfied. The State Court considered both the merits of liability and damages at the final evidentiary hearing it held on June 22, 2022, at which Defendant appeared and presented evidence. The State Court's findings were necessary to its decision.

C. *Whether Defendant had a full and fair opportunity to present his defenses in the State Court Action*

Defendant has complained about the State Court trial, raising the issue of whether Defendant had a full and fair opportunity to litigate the issues of liability and damages at the evidentiary hearing held on June 22, 2022. The First Transcript and the Second Transcript establish that Defendant was afforded a full and fair opportunity to present his defenses in the State Court Action. At the hearing held March 28, 2022, the State Court stated on the record that it would consider whatever evidence and defenses Defendant wished to present at the damages hearing.[43] The FFCL entered "following the hearing on damages" were based on the evidence and testimony presented at the trial on damages. Such evidence included evidence supporting the merits of Plaintiffs' claims as well as Defendant's testimony. Consequently the issues determined in the State Court Action resulting in a determination of both liabilitly and damages were actually litigated at the "damages" trial. Defendant has not presented anything to this Court

---

[43] The Court:

> [S]o we need to set it for a trial on the damages. At that trial, if Mr. Gonzales has any merit to whatever claims he would raise as a defense to liability, I can consider it then and I can aways set it aside at a hearing, but I'm not going to do it just because someone said I'm not getting pleadings that are shown by counsel to be mailed or I couldn't get there because my car doesn't do well in snow, but Mr. Gonzales will have an opportunity, not just to defend against a damage amount, but to tell my why he thinks he should win.

First Transcript, p. 11, lines 7–17.

> [W]e'll give you a whole day for this trial on damages and that will allow Mr. Gonzales to bring whatever evidence he has to tell me why he thinks there shouldn't be liability to begin with.

First Transcript. p. 11, lines 24-25 and p. 12, lines 1-2.

suggesting that he did not have a full and fair opportunity to present his defenses in the State Court Action.

All of the elements under New Mexcico law thus have been satisfied to give the State Court Judgmnet and the State Court findings and conclusions issue preclusive effect.

### D. Whether the State Court's FFCL and Final Judgment preclusively establish Plaintiffs' non-dischargeability claims

The Court must determine whether the State Court's findings and conclusions resulting in the entry of its Final Judgment sufficiently satisfy the non-dischargeability elements under § 523(a)(2)(A) and/or (a)(6). In addition, if the findings and conclusions are entitled to issue preclusive effect, the Court must determine whether the Final Judgment fixes the amount of the non-dischargeable debt.

A party requesting a non-dischargeable judgment under any of the subsections of § 523 must prove all of the required elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 291 (holding that the preponderance-of-the-evidence standard of proof applies to all dischargeability exceptions under § 523). Plaintiffs assert that the State Court's FFCL and Final Judgment preclusively establish Plaintiffs' non-dischargeability claims. This Court agrees.

#### 1. Actual fraud under § 523(a)(2)(A)

Debts "for money, property, [or] services, . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud," are non-dischargeable under § 523(a)(2)(A). Plaintiffs assert that Defendant committed actual fraud by selling the Property to Ms. Luckey when he knew that Plaintiffs had paid him the full purchase price and knew that he was obligated to convey the Property to Plaintiffs.

Actual fraud under § 523(a)(2)(A) "denotes any fraud that 'involv[es] moral turpitude or intentional wrong.'" *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359 (2016) (quoting *Neal v.*

*Clark*, 95 U.S. 704, 709 (1878)).  It "consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done, or omitted with the design of perpetrating what is known to be a cheat or deception." 4 Collier on Bankruptcy ¶ 523.08[1][e] (Richard Levin & Henry Sommer eds., 16th ed.).  An intentional scheme to cheat or deprive someone of property or a legal right constitutes actual fraud under § 523(a)(2)(A). *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 690 (10th Cir. BAP 2013); *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001) (same). Actual fraud under § 523(a)(2)(A), though it requires wrongful intent, can exist without a false represenation. *Husky,* 578 U.S. at 361-62 (non-inducement based fraud, such as a fraudulent conveyance, constitutes actual fraud under § 523(A)(2)(A)); *Glencove Holdings, LLC v. Bloom (In re Bloom),* 634 B.R. 559, 595 (10th Cir. BAP  2021) ("Actual fraud could involve misrepresentations, but misrepresentations are not required for actual fraud."), *aff'd*, No. 22-1005, 2022 WL 2679049 (10th Cir. July 12, 2022)*.* The Court may infer fraudulent intent based on "circumstantial evidence or by inferences drawn from a course of condut or from the totality of the circumstances." *Tobias v. Alvarado (In re Alvarado)*, 608 B.R. 877, 885 (Bankr. W.D. Okla. 2019); *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 222 (10th Cir. BAP 2013) (intent to deceive may be inferred based on the totality of the circumstances).

The FFCL upon which Plaintiffs rely to establish their claim under § 523(a)(2)(A) do not include a specific finding of fraud. Yet, it is clear from the State Court's fact findings that Defendant engaged in an intentional scheme to deprive Plaintiffs of their legal right to obtain the Property upon their payment of the purchase price in full.

13

The FFCL include findings that Plaintiffs paid Defendant the entire $15,000 for the Property as required under the Purchase Agreement,[44] that Defendant secretly sold the Property a second time to Ms. Luckey for $90,000 when he knew that he had been fully paid by Plaintiffs and was obligated to convey the Property to Plaintiffs,[45] that Defendant knew that the higher price for the sale of the Property to Ms. Luckey was due to Plaintiffs' renovations to the Property, but he never reimbursed Plaintiffs for their work,[46] that Defendant intentionally interfered with the Plaintiffs' lease with Ms. Luckey,[47] and that Defendant's conduct was willful, malicious, and in bad faith.[48] These fact findings show that Defendant Defendant intentionally and wrongfully circumvented his obligation to convey the Property to Plaintiffs and cheated Plaintiffs of their legal right to the Property. By selling the renovated Property to Ms. Luckey for a higher price, as a result of his fraudulent conduct, he obtained the benefit of Plaintiffs' renovations to the Property without paying for them. Further, the FFCL establish Defendant's deceitful course of conduct and subjective wrongful intent in selling the Property a second time to Ms. Luckey.

In addition, the FFCL and Final Judgment include an award of punitive damages based on the State Court's conclusion that Defendant "had a culpable state of mind" and that "his conduct was willful, malicious, and in bad faith." The Court may infer fraud based on a State Court's award of punitive damages, provided such award necessarily requires a finding of all non-dischargeabilty elements. *See In re Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003) (award of punititive damages which could only have been based on defendant's fraudulent conduct preclusively established plaintiff's non-dischargeability claim); *Miller v. Grimsley (In re*

---

[44] FFCL, ¶ 10.
[45] FFCL, ¶ 37.
[46] *Id.*
[47] FFCL, ¶ H.
[48] *Id.*

*Grimsley*), 449 B.R. 602, 620 (Bankr. S.D. Ohio 2011) (inferring fraud from jury's award of punitive damages and applying issue preclusion to establish non-dischargeability claim under § 523(a)(2)(A)).

New Mexico law "does not require a finding of fraud in the classical sense to support a punitive damage award." *Jones v. Auge*, 2015-NMCA-016, ¶ 65, 344 P.3d 989, 1006. Rather, punitive damages are warranted under New Mexico law where "the wrongdoer's conduct is willful, wanton, malicious, reckless, oppressive, grossly negligent, *or* fraudulent and in bad faith." *Madrid v. Marquez*, 2001-NMCA-087, ¶ 8, 131 N.M. 132, 135, 33 P.3d 683, 686 (emphasis added). Thus, the fact that the State Court's Final Judgment included an award of punitive damages is insuffecent on its own to conclude that Defendant committed fraud within the meaning of § 523(a)(2)(A). [49]

The State Court awarded punitive damages based on its conclusion that Defendant had "a culpable mental state" and that Defendant's conduct was "willful, malicious, and in bad faith." Under New Mexico law, "[c]ircumstances which could make punitive damages appropriate in a breach of contract case include . . . an intentional breach accompanied by fraud." *Bogle v. Summit Inv. Co.*, 2005-NMCA-024, ¶ 28, 137 N.M. 80, 90, 107 P.3d 520, 530. The State Court's conclusions regarding Defendant's state of mind that supported the State Court's award of punitive damages were based on specific fact findings that Defendant secretly sold the Property to Ms. Luckey a second time knowing that: 1) Plaintiffs had fully paid him, 2) he was obligated

---

[49] *See In re Plyam*, 530 B.R. 456, 470 (9th Cir. BAP 2015) (concluding that the jury's punitive damages award based on disjunctive findings of malice, oppression, or fraud was insufficient to apply issue preclusion to establish plaintiff's non-dischargeability claim under § 523(a)(6) for willful and malicious injury); *Schmidt v. Panos (In re Panos)*, 573 B.R. 723, 739 (Bankr. S.D. Ohio 2017) (no preclusive effect based on jury's award of punitive damages since it was possible the jury based its punitive damages award on a lower standard than the standard required to find a willful and malicious injury under § 523(a)(6)).

to convey title to the Property to Plaintiffs, and 3) he obtained a higher sales price because of Plaintiffs' renovations, yet did not reimburse Plaintiffs for the renovation costs.

Thus, even though the FFCL do not include a specific fraud finding, the State Court's award of punitive damages based on Defendant's "culpable state of mind," "willful and malicious" conduct, and "bad faith," taken in the context of the State Court's underlying fact findings describing Defendant's actions in selling the Property to Ms. Luckey, further establish the required elements of Plaintiffs' actual fraud claim under § 523(a)(2)(A). *See Beard Research, Inc. v. Kates (In re Kates)*, 485 B.R. 86, 103 (Bankr. E.D. Pa. 2012) ("By . . . focusing on the specific findings . . . in the prior proceeding that are entitled to preclusive effect . . . the court evaluates whether the preclusive facts, considered in the aggregate, establish any or all of the elements of a § 523(a) claim."); *see also Grimsley*, 449 B.R. at 616 (infering fraud notwithstanding lack of express finding of fraud in the prior state court action where the state court awarded punitive damages). The fact findings establishing Defendant's actual fraud, resulting in an award of punitive damages, were necessarily determined in the Final Judgment. The Court, therefore, concludes that the FFCL and Judgment preclusively establish actual fraudulent conduct within the meaning of § 523(a)(2)(A).

### 2. *Willful and malicious injury under § 523(a)(6)*

Section 523(a)(6) excepts from discharge debts resulting from a debtor's "willful and malicious injury to another entity or to the property of another." Non-dischargeability under § 523(a)(6) requires proof that the injury is both willful *and* malicious. *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004). "For an injury to be willful, there must be a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Bloom*, 634 B.R. at 597. In other words, the debtor must "intend 'the *consequences* of an act,' not

16

simply 'the act itself[;]'" an intentional act that results in injury is not sufficient. *Kawaauhau v. Geiger,* 523 U.S. 57, 61-62 (1998) (quoting Restatement (Second) of Torts § 8A, Comment a. p. 15 (1964)); *see also Hiner v. Koukhtiev (In re Koukhtiev),* 576 B.R. 107, 122 (Bankr. S.D. Tex. 2017) (Section 523(a)(6) "excludes intentional acts that merely happen to cause injury."). Proof that the debtor intended harm may be shown where the debtor either desires the specific consequences of his act, or "believe[s] [that] the consequences are substantially certain to result from it." *Moore*, 357 F.3d at 1129 (quoting *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999)).

A willful injury is "malicious" when it is undertaken "without justification or excuse."[50] "To determine whether an injury is malicious, the court must review all the surrounding circumstances, including any justification or excuse offered by the debtor . . . ." *Bloom*, 634 B.R. at 597.

Ordinarily, breach of contract, even an intentional breach of contract, will not establish a non-dischargeability claim under § 523(a)(6). *Lockerby v. Sierra*, 535 F.3d 1038, 1041-42 (9th Cir. 2008) (an intentional breach of contract cannot establish a claim under § 523(a)(6) unless the intentional breach also supports a separate tort claim under state law). However, "where an intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6)." *In re Jercich*, 238 F.3d 1202, 1205 (9th Cir. 2001); *WLC Enters., Inc. v. Rylant (In re Rylant)*, 594 B.R. 783, 789 (Bankr. D.N.M. 2018) (holding "that there is nothing in the language of the Bankruptcy

---

[50] *In re Marguilies,* 721 F. App'x 98, 101 (2d Cir. 2018) (malicious means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will" (quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006))); *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012) (same); *Am. First Credit Union v. Gagle (In re Gagle)*, 230 B.R. 174, 181 (Bankr. D. Utah 1999) ("In order for an act to be willful and malicious it must be a deliberate or intentional injury (willful) that is performed without justification or excuse (malicious).").

Code, including § 523(a), preventing a breach of contract judgment from being declared nondischargeable under § 523(a)(6), so long as the requirements of that subsection are met."). Thus, a debtor's intentional conversion of another person's property without justification or excuse states a claim for excepting a debt from discharge under § 523(a)(6). *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934) ("There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception."); *Longley*, 235 B.R. at 657 ("[C]onversion can, under certain circumstances, give rise to a non-dischargeable debt pursuant to § 523(a)(6)."); *In re Sanders*, 210 F.3d 390, at *2 (10th Cir. 2000) (unpublished) (nothing indicates the Supreme Court's intention to immunize debtors under § 523(a)(6) for willful and malicious breach of contract); *cf. Rylant*, 594 B.R. at 789 (debt arising from debtor's scheme to take plaintiff's restaurant assets without paying for them was non-dischargeable under § 523(a)(6).

The same facts that preclusively establish Plaintiffs' actual fraud claim also satisfy the non-dischargeability elements under § 523(a)(6). In particular, the State Court found that Defendant "knew that he had been fully paid and was obligated to convey the Property to Plaintiffs when he instead secretly sold [the Property] a second time to Ms. Luckey."[51] The State Court also found that Defendant knew that he obtained a higher sales price for the Property from Ms. Luckey because of Plaintiffs' renovations to the Property, but never reimbursed Plaintiffs for the renovation costs.[52] These fact findings establish that Defendant's secret sale of the Property to Ms. Luckey was willful, meaning that Defendant acted intentionally knowing that his sale of

---

[51] *Id.*
[52] *Id. See also* FFCL, ¶ 26 ("[Defendant] knew that the [Plaintiffs] had invested significant money renovating the Property."); FFCL ¶ 27 ("[Defendant] knew that the renovations had significantly increased the value of the Property."); FFCL ¶ 31 ("[Defendant] never reimbursed [Plaintiffs] for the value of the renovations.").

the Property to Ms. Luckey was substantially certain to cause Plaintiffs' harm. It was not merely a deliberate or intentional act that lead to injury.

Next, the State Court's fact finding that "when pressed, Defendant had no explanation for his conduct"[53] establishes that Defendant's actions causing willful injury to Plaintiffs were without justification or excuse.

Finally, the State Court's FFCL included a specific finding that Defendant's actions were willful and malicious, and awarded punitive damages based on Defendant's willful, malicious, bad faith conduct.[54] Under New Mexico law, malicious conduct necessary to support an award of punitive damages "is the intentional doing of a wrongful act with knowledge that the act was wrongful." *Bogle*, 2005-NMCA-013 at ¶ 29, 137 N.M. at 90, 107 P.3d at 530 (quoting UJI 13-861); *see also*, *Romero v. Mervyn's,* 1989-NMSC-081, ¶ 25, 109 N.M. 249, 255, 784 P.2d 992, 998 ("[M]alice . . . means 'the intentional doing of a wrongful act without justification or excuse. This means that the defendant not only intended to do the act which is ascertained to be wrongful, but that he knew it was wrong when he did it.'" (quoting *Loucks v. Albuquerque Nat'l Bank*, 1966-NMSC-176, ¶49, 76 N.M. 735, 747, 418 P.2d 191, 199)). These definitions are consistent with the meaning of "malicious" under § 523(a)(6), and, taking the FFCL as a whole, together with the State Court's conclusion that Defendant's actions were "willful, malicious, and in bad faith," demonstrate that such findings were necessary to the Final Judgment and satisfy the non-dischargeability elements of § 523(a)(6).

---

[53] FFCL, ¶ 37.
[54] FFCL, ¶¶ 37 and K.

E. *Whether the Final Judgment establishes the total amount of the non-dischargeable debt*

Before giving preclusive effect to a damage award, the Court must exercise care "to ensure that all damages arise solely from the prohibited § 523(a) conduct." *Murphy v. Spencer (In re Spencer)*, Adv. No. 15-1052t, 2016 WL 1556033, at *4 (Bankr. D.N.M. Apr. 14, 2016). All damages traceable to the non-dischargeable conduct, which can include punitive damages and attorneys' fees, are included in the non-dischargeable debt, even though such damages exceed the value obtained by the debtor from the non-dischargeable conduct. *Cohen v. de la Cruz*, 523 U.S. 213 (1998).[55]

The FFCL enumerated the following damages:

| | |
|---|---|
| $15,000 | based on the purchase price of the Property |
| $124,436.69 | based on the value of the renovations as compensation for Defendant's unjust enrichment |
| $38,250.00 | based on lost rents had Defendant not interfered with Plaintiffs' lease of the Property to Ms. Luckey |
| $250,000.00 | punitive damages |
| $26,926.35 | attorney's fees and costs |

---

[55] *Cohen* nevertheless "requires the alleged fraud proximately caused the debt in order for it to be excepted from discharge." *Hernandez v. Musgrave (In re Musgrave)*, BAP Nos. CO-10-049, 08-25165, 2011 WL 312883, at *9 (10th Cir. BAP Feb. 2, 2011). *See also Murphy v. Snyder (In re Snyder)*, 939 F.2d 92, 103 (2d Cir. 2019) ("[N]othing in *Cohen* bars a court from determining whether only a portion of a contested debt 'arose from' the amounts obtained through defalcation, and thus is nondischargeable."); *In re Munoz*, 592 B.R. 736, 744-45 (D. Colo. 2018) (recognizing that *Cohen* discusses two distinct concepts: "whether 11 U.S.C. § 523(a)(2)(A) is limited to the value obtained through fraud (the answer is no); and whether a portion of an allegedly nondischargeable debt 'arose from' amounts obtained by fraud.").

Based on these figures, the State Court entered a total judgment in the amount of $454,613.04, comprised of $177,686.60 in compensatory damages, $250,000.00 in punitive damages, and $26,926.35 in attorney's fees and costs.[56]

Consistent with *Cohen*, the Court concludes that, except for the $15,000 awarded to compensate Plaintiffs for the purchase price of the Property, the total judgment amount arises from Defendant's non-dischargeable conduct and fixes the amount of the non-dischargeable debt. The $15,000 is not traceable to Defendant's non-dischargeable conduct, since Plaintiffs would have been required to pay that price to obtain the Property even in the absence of Defendant's fraud. The FFCL do not establish that Defendant never intended to transfer the Property to Plaintiffs when the parties first entered into the purchase agreement for the Property. As for the remainder of the damages, including the attorney's fees and costs awarded by the State Court, those damages result from Defendant's non-dischargeable conduct, including his willful and malicious breach of the contract and his fraudulent scheme to deprive Plaintiffs' of the Property by selling the Property a second time to Ms. Luckey. In other words, Defendant's "single course of related conduct," caused Plaintiffs' injuries; consequently, all but the $15,000 awarded in the Final Judgment is properly included in the non-dischargeable debt. *Kates*, 485 B.R. at 111.

Plaintiffs also request the Court to award attorneys' fees in bringing this non-dischargeability action. Under the "American Rule" applied in federal litigation, including bankruptcy litigation, with two major exceptions, a prevailing party is not ordinarily entitled to collect attorney's fees from his opponent. *Busch v. Hancock (In re Busch)*, 369 B.R. 614, 624 (10th Cir. BAP 2007). The exceptions are when the parties have entered a contract that shifts attorney's fees or when a statute provides for fee shifting. *Id.* at 624-25. Thus, unless a statute or

---

[56] Final Judgment.

contract provides otherwise, each litigant is required to pay his or her own attorney's fees, "win or lose." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010)). Plaintiffs have not directed the Court to any statutory or contract provision that would allow them to recover attorneys' fees for prosecuting this adversary proceeding. Plaintiffs are not entitled to an award of attorneys' fees incurred in prosecuting this adversary proceeding.

CONCLUSION

Based on the foregoing, the Court will grant the Renewed Motion, in part, determining that all but $15,000 of the debt embodied in the Final Judgment is non-dischargeable under § 523(a)(2)(A) and (a)(6). The Court otherwise will deny the relief requested in the Renewed Motion. The Court will enter a separate judgment consistent with this Memorandum Opinion.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: January 23, 2025

COPY TO:

Dennis A Banning
Attorney for Plaintiffs
New Mexico Financial Law
320 Gold Ave, SW #1401
Albuquerque, NM 87102-3299

George P Gonzales
1736 Cedar Drive
Grants, NM 87020